UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DOMAIN VAULT LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-0789-B |
| | § | |
| RIGHTSIDE GROUP LTD, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Rightside Group Ltd's Motion to Compel Arbitration. Doc. 6. For the reasons that follow, the Court **GRANTS** Defendant's Motion.

## I.

## BACKGROUND[1]

This is a contract dispute. Plaintiff Domain Vault LLC filed suit claiming that Rightside Group instructed its subsidiary, Name.com, to withhold domain names that Domain Vault had purchased from Name.com so that Domain Vault could not use them. Doc. 1, Pl.'s Compl., ¶ 3.9. Domain Vault maintains that Rightside Group did this as part of a conspiracy with another entity to take control of assets, including the domain names at issue, that were part of a receivership ordered by the U.S. District Court for the Northern District of Texas. *Id.* ¶¶ 3.1–3.2, 3.8. For its part, Rightside Group responds that it instructed Name.com to freeze the transfer of domain names to

---

[1]The Court draws its factual account from the initial pleadings as well as the parties' briefing on the Motion at issue. Any contested fact is identified as the allegation of a particular party.

1

Domain Vault because a provision in Name.com's Registration Agreement required it to do so when the ownership of domain names was at issue. Doc. 6, Def.'s Mot. to Compel Arbiration, 3. The ownership of domain names was at issue because of a case related to the receivership that was filed in Collin County District Court. Doc. 1, Pl.'s Compl., ¶¶ 5.12–5.17.

Rightside Group moves the Court to compel Domain Vault's claims to arbitration. Doc. 6, Def.'s Mot. to Compel Arbitration. It alleges that Domain Vault assented to a Registration Agreement on Name.com when it purchased the domain names at issue and that the Agreement contained an arbitration provision that applies to the claims here. Doc. 20, Def.'s Reply, 2–3. Rightside Group acknowledges that it is not a party to the Registration Agreement, but claims that the doctrine of equitable estoppel applies so that it may enforce the Agreement even though it is not a party to it. *Id*. at 8–10. Domain Vault counters that it never personally accessed Name.com or placed orders on Name.com and therefore never assented to the Registration Agreement. Doc. 71, Pl.'s Resp. to Def.'s Suppl. App'x, 4–7. It also claims that even if it did assent to the Agreement, equitable estoppel does not apply in this case. *Id*. at 2–3.

Since Rightside Group filed its Motion to Compel Arbitration, the parties have filed numerous briefs responding to Rightside Group's Motion and raising new issues relating to the Motion. *See* Doc. 17, Pl.'s Resp.; Doc. 20, Def.'s Reply; Doc 56, Pl.'s Surreply; Doc. 63, Def.'s Suppl. App'x to Def.'s Reply; Doc. 71, Pl.'s Resp. to Def.'s Suppl. App'x. The Court held a hearing on Rightside Group's Motion on January 16, 2018, and the Motion is ripe for review.

## II.

## LEGAL STANDARD

In enacting the Federal Arbitration Act (FAA), "Congress . . . expressed a strong policy

favoring arbitration before litigation." *J.S. & H. Constr. Co. v. Richmond Cty Hosp. Auth.*, 473 F.2d 212, 214–15 (5th Cir. 1973). Under the FAA, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The Fifth Circuit follows a two-step procedure to decide whether to compel arbitration: (1) determine "whether the parties agreed to arbitrate the dispute in question," and (2) determine whether any external legal constraints foreclose arbitration of the dispute. *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257–58 (5th Cir. 1996) (per curiam)."In determining the contractual validity of an arbitration agreement, courts apply ordinary state-law principles that govern the formation of contracts." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 301 (5th Cir. 2004).

In conducting the first step of the analysis—whether the parties agreed to arbitrate the dispute in question—a court will find an agreement where: (1) there exists between the parties "a valid agreement to arbitrate," and (2) the "dispute in question falls within the scope of that arbitration agreement." *Id.* Ordinarily, the second question is one for the Court, but where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the second question is for the arbitrator. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201–02 (5th Cir. 2016). Here, Rightside Group claims that the arbitration provision contains a delegation clause that assigns resolution of question two to the arbitrator, *see* Doc. 6, Def.'s Mot. to Compel Arbitration, 10, and Domain Vault does not disagree. Thus, the Court need only consider question one.

3

## III.

## ANALYSIS

*A.     Whether Domain Vault Assented to the Registration Agreement on Name.com*

Domain Vault first maintains that it never personally accessed Name.com or placed orders on Name.com and therefore never assented to the Registration Agreement. Rightside Group counters that Domain Vault assented to the Registration Agreement on March 31, 2014 when it logged into its account and was presented with Name.com's modified Registration Agreement. Doc. 20, Def.'s Reply, 2. According to Rightside Group, Domain Vault was required to click a button labeled "I Agree" to assent to the modified Agreement, which was presented in full on the screen. *Id*. Rightside Group also claims that Domain Vault assented to the Agreement in a similar manner on six subsequent dates when it placed orders on Name.com. *Id*. at 3. Rightside Group claims that when a user placed an order on Name.com, the user was required to agree to the Registration Agreement, which was provided through a hyperlink, before completing the order. *Id*. In so stating, Rightside Group's relies a declaration from David McBreen, Senior Director of Software Engineering at Name.com. Doc. 63, Def.'s Suppl. App'x. to Def.'s Reply, Ex. B.

Domain Vault does not dispute that a valid contract is created when a party assents to an agreement online and courts applying Washington law[2] agree that similar "clickwrap" agreements constitute valid contracts. *See Ekin v. Amazon Servs. LLC*, 84 F. Supp. 3d 1172, 1173, 1175 n.5 (W.D. Wash 2014) (finding that the plaintiffs accepted Amazon's Terms and Conditions when they clicked a button next to the hyperlinked agreement indicating they agreed to the Terms and

---

[2] The parties agree that Washington state law applies to the Registration Agreement. Doc. 6, Def.'s Mot. to Compel Arbitration, 5; Doc. 56, Pl.'s Surreply, 2.

Conditions). But Domain Vault argues that it never assented to the Agreement on Name.com and therefore there is no valid contract in this case. Doc. 71, Pl.'s Resp. to Def.'s Suppl. App'x, 4–6. But it claims it did not have access to the Name.com account on March 31, 2014, and even once it did have access to the account it never placed orders on Name.com. *Id.* at 4–7. In sum, the crux of its argument is that the information in McBreen's declaration is false.

Domain Vault also claims the McBreen declaration is not admissible. *Id.* at 10–12. It claims that the report containing search results of Name.com's database attached to the declaration is hearsay and that McBreen's "expert testimony" is not supported with the required reasoning or methodology. *Id.* Thus, whether Domain Vault assented to the Registration Agreement on Name.com turns on whether the McBreen declaration is sufficient evidence to demonstrate Domain Vault's assent.

To determine if evidence in support of a motion to compel arbitration is admissible, courts apply the same standard as that applied to a motion for summary judgment. *Galitski v. Samsung Telecomm Am., LLC*, No. 3:12-cv-4782-D, 2013 WL 6330645, at *1 n.5 (N.D. Tex. Dec. 5, 2013).That is, the evidence must comply with the Federal Rules of Evidence and be based on personal knowledge. *Id.* But the evidence need not be perfect. *see Grant v. Houser*, 469 Fed. App'x 310, 315 (5th Cir. 2012)(finding a corporate officer's affidavit based on personal knowledge about the corporation's purchase of its predecessor's assets was sufficient evidence even though the contract of sale evidencing the acquisition was not attached). And again, there is a strong presumption in favor of arbitration under the FAA. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "Accordingly, for ruling on a motion to compel arbitration, the FAA requires an expeditious and summary hearing, with only restricted inquiry into factual issues." *Grant,* 469 Fed.

5

App'x. at 315 (internal quotation marks omitted). "The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." *Id.*

Based on these principles, the McBreen declaration is admissible evidence. McBreen states that as Senior Director for Software Engineering at Name.com he has personal knowledge of the information in his declaration. Doc. 63, Def.'s Suppl. App'x to Def.'s Reply, Ex. B. He states that he is responsible for "overseeing the creation and maintenance of the Name.com database" and "Name.com's code base, which holds the code that supports Name.com's website." *Id* at 1. According to McBreen, "[t]he Name.com code base that supports the Name.com website automatically writes information obtained from the Name.com website to the Name.com database, in the ordinary course of Name.com's business, including when a user affirmatively accepts and agrees to Name.com's Registration Agreement." *Id.* at 3. McBreen ran a search of the information captured in Name.com's database to determine that the account belonging to Domain Vault assented to the modified Registration Agreement on March 31, 2014, and when it purchased domain names twice on March 31, 2014, and then again on April 12, 2104, April 22, 2014, April 23, 2014, and January 19, 2015. *Id.* at 7.

Domain Vault argues that the report of the search results violates Federal Rule of Evidence 1002 because the search results are a "report of a report" and the report is not the original of a written record. Doc. 71, Pl.'s Resp. to Def.'s Suppl. App'x, 10. But the report of the search results is merely an excerpt of the data contained in the Name.com database; it is not, as Domain Vault suggests, a new report of information compiled from a different source. And while Domain Vault claims that Rightside Group was required to submit the entire Name.com database, *id.*, Rule 1006 would likely allow Rightside Group to submit a summary of the information in the database, which

6

is effectively what Rightside Group did. *See* Fed. R. Evid. 1006 (allowing a party to "use a summary . . . to prove the content of voluminous writings").

Next, Domain Vault appears to urge the Court to undertake a *Daubert* analysis of McBreen's declaration. Doc. 71, Pl.'s Resp. to Def.'s Suppl. App'x, 12. Domain Vault argues that the McBreen declaration is inadmissible because it is expert testimony that must be supported by reasoning and methodology rather than just the expert's credentials. *Id*. But Rightside Group does not designate McBreen as an expert nor does McBreen claim he is one. McBreen only claims he has personal knowledge of the way Name.com's code base and database operate because it is his job to manage them. Doc. 63, Def.'s Suppl. App'x, Ex. B. Thus, *Daubert* is inapplicable here.

As mentioned, even if McBreen's declaration is admissible, Domain Vault also claims that it is false. Domain Vault asserts that Name.com did not modify its Registration Agreement, Domain Vault did not have access to the Name.com account that allegedly assented to the agreement during the relevant time period, and Domain Vault never placed orders on Name.com. Domain Vault also claims that even if the McBreen declaration is accurate, it demonstrates only that some entity assented to the Registration Agreement, not that Domain Vault did.

But Domain Vault has not presented sufficient evidence to rebut the evidence in the McBreen declaration. Domain Vault's argument is supported only by the declaration of Shawna Reilly. Doc. 71, Pl.'s Resp. to Def.'s Suppl. App'x, 5–6. Although she apparently works for Domain Vault, Reilly does not state that she has personal knowledge of the information in her declaration nor does she explain from where her knowledge does come. *See* Doc. 71-1, App'x to Pl.'s Resp. to Def.'s Suppl. App'x, Ex. C. And although some unknown person or automated computer program could have logged into Domain Vault's account and assented to the Registration Agreement,

7

Domain Vault presents no evidence that this is the case. Thus, Domain Vault has not presented sufficient evidence to rebut the McBreen declaration. Given the FAA's presumption in favor of arbitration and the Court's limited inquiry into factual issues, the Court finds that Rightside Group has proven the existence of an agreement to arbitration between Domain Vault and Name.com by a preponderance of the evidence.

> B. *Whether Rightside Group May Enforce the Arbitration Provision Even Though it is Not a Party to the Agreement*

The second and only remaining issue is whether Rightside Group can enforce the arbitration provision even though it is not a party to the Registration Agreement. The parties agreed at the hearing that this is a question for the Court, not the arbitrator, to decide.

Rightside Group claims that equitable estoppel applies for two reasons. First, it claims the doctrine applies because Domain Vault has taken advantage of the benefits of the Registration Agreement by buying domain names, and now tries to avoid the burden of the Agreement by attempting to circumvent arbitration. Doc. 20, Def.'s Reply, 2, 8–9. Second, it claims equitable estoppel applies because Domain Vault's claims are intertwined with the Registration Agreement. *Id.* at 9. Domain Vault responds that equitable estoppel does not apply because disposition of this case is different than the dispositions of the only cases in which Washington courts have applied the doctrine. Doc. 56, Pl.'s Surreply, 5.

Washington courts have applied the doctrine of equitable estoppel to the arbitration context in two situations. First, because "equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens the contract imposes . . . equitable estoppel may require a nonsignatory to arbitrate a claim if the nonparty has taken advantage of the

8

contract containing the arbitration provision." *Townsend v. Quadrant Corp.*, 268 P.3d 917, 922 (Wash. 2012)(internal citations and quotation marks omitted).

Rightside Group argues that Domain Vault has "knowingly exploited" the benefits of the Registration Agreement by using Name.com's services and now seeks to avoid the burden of the Agreement – arbitration– by suing Rightside Group instead of Name.com. Doc. 20, Def.'s Reply, 2, 8–9. Domain Vault argues that the rule is inapplicable because in this case it is a party to the agreement that has allegedly exploited the contract, not the nonparty. Doc. 56, Pl.'s Surreply, 5.

In the second situation in which Washington court apply the doctrine, equitable estoppel may require a signatory "to arbitrate a claim brought by a nonsignatory 'because of the close relationship between the entities involved . . . and the fact that the claims were intertwined with the underlying contractual obligations.'" *C.G. v. Valve Corp.*, No. C16-1941-JCC, 2017 WL 1210220, at *4 (W.D. Wash. Apr. 3, 2017) (quoting *E.I. DuPont de Nemours & Co., v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3rd Cir. 2001)).

Rightside Group argues that "Domain Vault's claims cannot be resolved without interpreting the Registration Agreement, which allows Name.com to put a compliance lock on domain names," and Domain Vault alleges a close relationship between Rightside Group and Name.com. Doc. 20, Def.'s Reply, 9. Domain Vault argues that the second rule is inapplicable because it requires the claims to be brought by the nonsignatory, and the signatory filed suit in this case.[3] Doc. 56, Pl.'s

---

[3]Domain Vault also argues that the Ninth Circuit has never held that nonsignatory defendants may invoke equitable estoppel against signatory plaintiffs. Doc. 56, Pl.'s Surreply, 3, 5–6. Although the two cases Domain Vault cites say this, neither applies Washington equitable-estoppel law and both decline to extend the doctrine to the situation of a nonsignatory defendant only because the claims in those cases were attenuated from the contract containing the arbitration provision. *See Rajagopalan v. NoteWorld LLC*, 718 F.3d 844, 847–48 (9th Cir. 2013) (finding equitable estoppel did not apply because the plaintiff sought only statutory claims separate from the contract); *Mundi v. Union Sec. Life Ins. Co.*,

9

Surreply, 5.

Domain Vault is correct that the dispositions in the Washington equitable estoppel cases are different from the disposition in this case. But to preclude application of the doctrine on that basis would be a rigid reading of the law and would ignore the reasoning behind the Washington courts' rules. The relevant inquiry in both situations is how closely the plaintiff's claims relate to the agreement containing the arbitration provision. As noted above, Rightside Group argues that interpretation of the Registration Agreement is required in order to resolve Domain Vault's claims because the claims revolve around Name.com's ability to lock domain names pending the outcome of court disputes. Doc. 20, Def.'s Reply, 9. Thus, both equitable estoppel situations apply here. Domain Vault cannot take advantage of the Registration Agreement by purchasing domain names through Name.com and then circumvent the burden of arbitration required by the Registration Agreement. Further, Domain Vault has not disputed that its claims are intertwined with the provision in the Agreement allowing Name.com to freeze domain names when the ownership of those domain names is in dispute. And Domain Vault agrees that Name.com is Rightside Group's subsidiary, evincing a close relationship between the entities involved.

Finally, Domain Vault argues that even if equitable estoppel applies, Rightside Group would be precluded from invoking the doctrine based on the equitable defense of "unclean hands." Doc. 56, Pl.'s Surreply, 6–7. But Domain Vault states only that "[m]aking false representations to the Court" constitutes unclean hands and that "a party's conduct infected with fraud and perjury is too great to be overriden" but provides no substantive legal rules for the Court to follow. *Id*. at 6 (internal

---

555 F.3d 1042, 1047 (9th Cir. 2009) (holding that the nonsignatory defendant could not enforce an arbitration agreement in an equity credit line agreement because the plaintiff's claim about breach of an insurance policy was not "intertwined" with the equity credit line agreement).

citations and quotation marks omitted). So the Court declines to address whether the defense of unclean hands applies. Therefore, the Court holds that Rightside Group may use the doctrine of equitable estoppel as construed by Washington state law to enforce the arbitration provision even though it is not a party to the Registration Agreement.[4]

C.  *Staying the Case Pending the Outcome of Arbitration*

Rightside Group asks the Court to stay this case pending the outcome of arbitration based on the FAA's requirements. Doc. 6, Pl.'s Mot. to Compel Arbitration, 11–12. Domain Vault does not dispute that the case should be stayed if arbitration is required, and the Court agrees that the FAA compels it to stay the proceedings. *See* 9 U.S.C. § 3 (instructing courts to stay a case when "such suit or proceeding is referable to arbitration"). Thus, this Court orders the proceedings stayed pending the outcome of arbitration.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Compel Arbitration, Doc. 6, and **STAYS** the case pending the outcome of arbitration. The Clerk of Court is directed to administratively close the case.

---

[4] The parties also argue about the significance of a third-party dispute provision in the Registration Agreement that states that adjudication of third-party disputes should be litigated in courts. *See* Doc. 6-1, Def.'s App'x to Mot. to Compel Arbitration, 14. Domain Vault argues that the provision means that all disputes with a party other than Name.com must be in court. Doc. 17, Pl.'s Resp. 13. Rightside Group responds that the provision is inapposite because it applies only to third-party use of registered domain names. Doc. 20, Def.'s Reply, 10. Besides these minimal arguments, the parties have not presented any evidence to illuminate the meaning of the provision. So in light of the FAA's presumption of arbitrability and the Court's finding that equitable estoppel applies in this case, the Court rules in favor of arbitrability and finds the third-party provision does not preclude arbitration here.

SO ORDERED.

SIGNED: January 30, 2018.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE